# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 5, 2021

Lyle W. Cayce
Clerk

No. 20-40381

United States of America,

*Plaintiff—Appellee,*

*versus*

Chadwick Marvin Thompson,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Eastern District of Texas
No. 6:13-CR-23-1

Before Jones, Smith, and Elrod, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Chadwick Thompson pleaded guilty of conspiracy to distribute and to possess with intent to distribute methamphetamine. The district court denied his request for compassionate release from prison on account of his underlying health issues and the COVID-19 pandemic ("COVID"). We affirm the denial.

I.

Thompson was indicted on fourteen counts arising from a drug trafficking conspiracy. He reached an agreement with the government and

No. 20-40381

pleaded guilty to Count One: conspiracy to distribute and to possess with intent to distribute methamphetamine. Because that was Thompson's third felony conviction, the court deemed him a career offender and sentenced him to 240 months' imprisonment. He is an inmate at the Federal Correctional Institution ("FCI") in Texarkana, Texas, where he has served less than eight of his twenty years.

Thompson is forty-three years old, suffers from hypertension and high cholesterol, and had a stroke over ten years ago, from which he suffers no lingering effects.[1] On April 13, 2020, he submitted a request to FCI's warden, seeking compassionate release based on his underlying health conditions and the resulting heightened risk of severe symptoms from COVID. Although the warden acknowledged Thompson's "legitimate concerns and fears about the spread and effects" of COVID, those concerns did not "warrant an early release from [his] sentence." Accordingly, the warden denied the request on May 5. On May 15, Thompson filed a motion for compassionate release in the district court under 18 U.S.C. § 3582; the court denied it about a week later. He appeals that denial.

II.

The general rule is that "court[s] may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). But that is subject to a few exceptions. Relevant here, if "extraordinary and compelling reasons" justify a reduction, courts appropriately may reduce the sentence

---

[1] Thompson also asserts, for the first time on appeal, that he is obese. Although it would not alter our view of the case, because he raises that fact for the first time on appeal, we do not address it. *Theriot v. Par. of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999) ("An appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling.").

No. 20-40381

"after considering the factors set forth in section 3553(a) . . . ."
§ 3582(c)(1)(A), (c)(1)(A)(i).  The district court did not find any "extraordinary and compelling reasons" warranting compassionate release and therefore did not consider the § 3553(a) factors.[2]  We review that determination for abuse of discretion.[3]

Although not dispositive, the commentary to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 informs our analysis as to what reasons may be sufficiently "extraordinary and compelling" to merit compassionate release.  *Rivas*, 2020 WL 6437288, at *2.  The comments to the U.S.S.G. provide four "extraordinary and compelling reasons" that may justify reducing a prison term: (1) medical conditions, (2) age, (3) family circumstances, and (4) "[o]ther [r]easons."  U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (2018).[4]  As relevant here, the comments describe the circumstances in which a "[m]edical [c]ondition" might be sufficiently serious to warrant release.  *Id.* § 1B1.13 cmt. n.1(A).  That is limited to two circumstances: where the defendant has either a terminal illness or a condition "that substantially diminishes the ability of the defendant to provide self-care . . . ."  *Id.*

---

[2] The government contends that, even if Thompson's health issues present "an extraordinary or compelling reason for release," the district court still properly denied release, because "he remains a danger to the community."  But because we affirm the district court's disposition on the question precedent, we need not address that issue.

[3] *See, e.g.*, *United States v. Rivas*, No. 20-10360, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020) (per curiam) (unpublished) (citing *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011) (per curiam)).

[4] We recognize and opt not to weigh in on the split of authority as to whether this catch-all provision delegates only to the Bureau of Prisons—and not the courts—the task of identifying "other reasons" justifying early release.  *See United States v. Ruffin*, 978 F.3d 1000, 1006–08 (6th Cir. 2020) (describing the circuit split).  Even if courts properly can invoke the catch-all provision, Thompson's case does not present sufficiently compelling "other reasons" for release, for the reasons explained below.

No. 20-40381

Thompson does not assert that his ability to care for himself has diminished, much less "substantially" so. *Id.* To the contrary, his hypertension and high cholesterol are managed effectively by medication. Moreover, Thompson previously has reported that he suffers no lingering effects from his 2009 stroke.

We acknowledge that Thompson's chronic illnesses place him at a higher risk of severe symptoms, should he contract COVID, is true for a person without these illnesses.[5] Nonetheless, as the district court noted, it is uncertain that he is at a significantly higher risk than is the general inmate population. In fact, nearly half of the adult population in the United States suffers from hypertension.[6] And roughly 12% of Americans suffer from high cholesterol.[7] Thus, we cannot say that either of those conditions makes Thompson's case "extraordinary."[8] Unfortunately, both are commonplace. And we cannot conclude that his increased risk makes either "terminal." *See*

---

[5] *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (Dec. 1, 2020) (listing underlying medical conditions that pose a higher risk of severe illness from COVID).

[6] DEP'T OF HEALTH AND HUM. SERVS., CTRS. FOR DISEASE CONTROL AND PREVENTION, NAT'L CTR. FOR HEALTH STATS., NCHS DATA BRIEF NO. 364, HYPERTENSION PREVALENCE AMONG ADULTS AGED 18 AND OVER: UNITED STATES, 2017–2018, at 1 (Apr. 2020), https://www.cdc.gov/nchs/data/databriefs/db364-h.pdf.

[7] DEP'T OF HEALTH AND HUM. SERVS., CTRS. FOR DISEASE CONTROL AND PREVENTION, NAT'L CTR. FOR HEALTH STATS., NCHS DATA BRIEF NO. 363, TOTAL AND HIGH-DENSITY LIPOPROTEIN CHOLESTEROL IN ADULTS: UNITED STATES 2015–2018, at 1 (Apr. 2020), https://www.cdc.gov/nchs/data/databriefs/db363-h.pdf.

[8] *See Extraordinary*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[b]eyond what is usual, customary, regular, or common").

U.S.S.G. § 1B1.13 cmt. n.1(A)(i).

To the extent that courts may grant compassionate release for "other reasons," *see supra* note 4, we agree with the district court that none here is sufficient. To be sure, courts around the country, in some exceptional cases, have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID. *E.g.*, *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020). Even where they have denied release, some courts have assumed that the pandemic, combined with underlying conditions, might be an extraordinary and compelling reason for compassionate release. *E.g.*, *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020). But that is certainly not a unanimous approach to every high-risk inmate with preexisting conditions seeking compassionate release.[9]

The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns.[10] Even where the

---

[9] *See, e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Lambert*, 829 F. App'x 117, 117–18 (6th Cir. 2020) (affirming denial of compassionate release for hydrocephalus); *United States v. Raymer*, No. 4:17-CR-153, 2020 WL 3451855, at *3–4 (E.D. Tex. June 23, 2020) (concluding that a borderline-obese 43-year-old man, suffering from fatty liver disease, bronchitis, and asthma, and who had contracted COVID, did not qualify for early release); *United States v. Martinez-Arias*, No. 2:11-cr-00598, 2020 WL 5210938, at *3–4 (S.D. Tex. Sept. 1, 2020) (finding no extraordinary circumstances for a 58-year-old inmate suffering from diabetes, hypertension, and high cholesterol).

[10] *See, e.g.*, *Zukerman*, 451 F. Supp. 3d at 335–36 (approving home incarceration in light of COVID for an obese 75-year-old man with diabetes and hypertension); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 394, 405, 407 (E.D. Pa. 2020) (reducing sentence to time served, because of COVID, for an inmate who was 1½ years from release after serving 17 years and suffered from diabetes, hypertension, and liver abnormalities); *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020)

No. 20-40381

court denied the motion on grounds other than the lack of "extraordinary and compelling reasons," the defendants' medical conditions oftentimes were more serious than are Thompson's.[11] Fear of COVID doesn't automatically entitle a prisoner to release. Thompson can point to no case in which a court, on account of the pandemic, has granted compassionate release to an otherwise healthy defendant with two, well-controlled, chronic medical conditions and who had completed less than half of his sentence.

    AFFIRMED.

_____

(granting compassionate release for COVID for a defendant who had served over 80% of his reduced sentence and suffered from end stage renal disease, diabetes, and hypertension).

    [11] *See, e.g.*, *Ruffin*, 978 F.3d at 1002, 1008 (describing a defendant's health conditions, which included a blood disorder, heart problems, high blood pressure, high cholesterol, and blood clots, before determining that the district court did not abuse its discretion in balancing the § 3553(a) factors); *United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *2 (6th Cir. Nov. 20, 2020) (affirming denial on § 3553(a) factors after district court assumed that the defendant, who was over 40, obese, and had had tuberculosis, presented an extraordinary and compelling reason for compassionate release); *Pawlowski*, 967 F.3d at 328–29, 331 (affirming denial on § 3553(a) factors after the government conceded that the defendant, who had heart disease, COPD, dyspnea, and only one lung, presented extraordinary and compelling reasons for release in light of COVID); *United States v. Spencer*, No. 20-3721, 2020 WL 5498932, at *1, *3 (6th Cir. Sept. 2, 2020) (unpublished) (affirming a district court's denial on § 3553(a) factors after assuming that the defendant, who was obese and suffered from a heart condition, demonstrated extraordinary and compelling circumstances).